Samuel G. **COOK**, E. D. Nixon, Mrs. Johnny Carr, John M. Poole, Mrs. A. W. West, Sr., Robert Matthews, Henry Collie, Jr., Mrs. Erna Dungee Allen, Plaintiffs,

v.

The **ADVERTISER COMPANY**, Inc., Harold Martin, individually and as editor and publisher of The Advertiser Company, Defendants.

**Civ. A. No. 3095–N.**

United States District Court,
M. D. Alabama, N. D.

Jan. 15, 1971.

Morris S. Dees, Jr., of Levin & Dees, Montgomery, Ala., and Solomon S. Seay,

Jr., of Gray, Seay & Langford, Montgomery, Ala., for plaintiffs.

M. Roland Nachman, Jr., of Steiner, Crum & Baker, Montgomery, Ala., for defendants.

## OPINION

JOHNSON, Chief Judge.

Plaintiffs on their own behalf and on behalf of all other Negroes similarly situated bring this class action against The Advertiser Company [1] and its president, Harold Martin.[2] In their complaint, filed with this Court on June 15, 1970, plaintiffs allege that the defendants, in maintaining an all-white society page, have violated their constitutional rights under the First and Fourteenth Amendments and their statutory rights under 42 U.S.C.A. § 1981. Plaintiffs ask this Court for a preliminary and permanent injunction and, in addition, plaintiff Cook seeks both compensatory and punitive damages.

The defendants by formal motion seek dismissal of the action on the following grounds: (1) lack of jurisdiction over the subject matter, and (2) failure to state a claim upon which relief can be granted. This motion to dismiss is submitted upon the pleadings and the briefs and arguments of the parties.

## I. JURISDICTION OVER THE SUBJECT MATTER.

1. The Advertiser Company publishes both of the City of Montgomery's daily newspapers: *The Advertiser* (morning) and *The Journal* (evening). Defendant also publishes the City's only Sunday newspaper, *The Advertiser-Journal*.

2. Defendant Martin is sued individually and in his capacity as editor and publisher of each of The Advertiser Company's newspapers.

3. Plaintiff Cook is seeking compensatory and punitive damages in excess of $10,000 for violation of his constitutional rights, thus satisfying the amount in controversy requirement of § 1331. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Damages in excess of $10,000 are also sought by plaintiff Cook for violation of his statutory rights under 42 U.S.C.A. § 1981. In an action under § 1981, both compensatory and

It is clear from the complaint that this Court has jurisdiction pursuant to 28 U.S.C.A. § 1331.[3]

## II. FAILURE TO STATE A CLAIM.

### *Facts*

In ruling on defendants' motion to dismiss, this Court must test the allegations in the complaint under the rule of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957): "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Thus, the Court accepts as true the following allegations set forth in plaintiffs' complaint.

Plaintiffs allege that defendant Advertiser Company has maintained and continues to maintain a policy of offering free space in the society sections of its newspapers for the publication of bridal announcements and wedding stories. These stories and announcements are usually accompanied by a suitable picture of the bride or bride-to-be. The bride or someone acting on her behalf is required to deliver the story, together with a suitable picture, to The Advertiser Company which in turn prints the story and picture in the society section of one of its newspapers.

punitive damages are allowable. See Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 472 (5th Cir. 1970). Cf. Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Lee v. Southern Home Sites Corp., 429 F.2d 290 (5th Cir. 1970).

Plaintiffs also allege jurisdiction under 28 U.S.C.A. § 1343(4):

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*     \*     \*     \*     \*

(4) To recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

For reasons hereinafter appearing, this Court determines that there is no jurisdiction under this section.

Plaintiffs further allege that, while those stories and pictures submitted by whites are published in the regular society sections of defendants' newspapers, those stories and pictures submitted by Negroes are printed outside the regular society section on a Negro news page. Plaintiffs contend that this practice, policy or custom violates their right to contract under 42 U.S.C.A. § 1981 and constitutes an arbitrary and capricious denial, based solely on race, of access to a forum for Negroes equal to that of whites, thus violating plaintiffs' rights under the First Amendment and due process and equal protection clauses of the Fourteenth Amendment.

### The Fourteenth Amendment Claim

■ Plaintiffs' state action argument in support of their contention that defendants' refusal to publish Negro bridal announcements in the society sections of their newspapers violates the due process and equal protection clauses of the Fourteenth Amendment is based upon the theory that conduct of private entities is subject to the safeguards of the Fourteenth Amendment when those entities exercise monopoly control in an area of vital public concern. While the Court finds plaintiffs' argument quite appealing, the decisions[4] plaintiffs rely upon are inapposite to the case *sub judice.* Furthermore, the cases rejecting plaintiffs' "state action" theory with regard to newspapers are numerous.[5]

■ The Court finds plaintiffs' contention that defendants are acting under "color of law" and thus violating 42 U.S.

C.A. § 1983 to be equally lacking in merit. The plaintiffs' "color of law" argument is predicated on the theory that when defendants seek to use a First Amendment protection as a shield against access by Negroes to a society section forum which the defendants' newspaper itself constitutes, defendants are acting under "color of law". In support of this theory, plaintiffs cite only one case, Gannon v. Action, 303 F.Supp. 1240 (E.D.Mo. 1969). This is an extremely tenuous argument. Moreover, the Supreme Court of the United States has cast serious doubts on the validity of the *Gannon* decision. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 166 n. 37, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### 42 U.S.C.A. § 1981

As stated earlier, plaintiffs contend that the refusal of The Advertiser Company to enter into a contract or agreement with plaintiff Cook and other Negroes to publish their wedding announcements and pictures on the same basis as The Advertiser enters into contracts with white persons violates plaintiffs' right to contract under section 1981. Since this Court has already determined that plaintiffs' theory that the defendants' actions constitute "state action" is untenable, the success of plaintiffs' § 1981 argument depends upon a finding that § 1981 prohibits private discrimination.

42 U.S.C.A. § 1981 provides in pertinent part that:

All persons within the jurisdiction of the United States shall have the same right * * * to make and enforce

---

4. Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) ; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

5. Chicago Joint Board v. Chicago Tribune, 435 F.2d 470 (7th Cir. 1970) ; In Re Wohl, 50 F.2d 254 (E.D.Mich.1931) ; Bloss v. Federated Publications, 5 Mich. App. 74, 145 N.W.2d 800 (1966) ; Shuck v. Carroll Daily Herald, 215 Iowa 1276, 247 N.W. 813 (1933). The plaintiffs re-

ly heavily for support of this theory on a recent law review article by Professor Barron of George Washington Law School, who suggests that Americans are being forced to seek "ever more unsettling assaults on the mass mind" because the traditional modes of communication are no longer open. Professor Barron notes, however, that any restrictions on the freedom of the press should originate with Congress. Barron, Access to the Press— A New First Amendment Right, 80 Harv. L.Rev. 1641 (1967).

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws * * * as is enjoyed by white citizens. * * *

In Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Supreme Court held that:

(1) The Thirteenth Amendment empowered Congress to enact legislation prohibiting private discrimination.

(2) Section one [6] of the Civil Rights Act of 1866 was passed pursuant to the Thirteenth Amendment; and

(3) 42 U.S.C. § 1982,[7] which is derived from section one, prohibits both public and private discrimination in the sale and leasing of real and personal property.

In Jones the Supreme Court noted that § 1981, which contains language closely paralleling that of § 1982, also originates from section one of the Civil Rights Act of 1866. 392 U.S. at 441–442, n. 78, 88 S.Ct. 2186. Prior to Jones, numerous federal courts had interpreted § 1981 as applying solely to "state action".[8] Subsequent to Jones, however, most courts which have been confronted with this question have held that § 1981 applies to private as well as public discrimination in the making and enforcing of contracts.[9]

It is important to note, however, that the cases decided since Jones have not fully explained or reasoned why § 1981 is applicable to private discrimination. Surprisingly enough, none of the courts in the cases decided after Jones has, in analogizing § 1981 to § 1982, discussed the important differences between § 1981's legislative history and § 1982's legislative history.

Section one of the 1866 Act was reenacted in section 18 of the Enforcement Act of 1870:

*And be it further enacted,* That the act to protect all persons in the United States in their civil rights, and furnish the means of their vindication, passed April nine, eighteen hundred and sixty-six, is hereby re-enacted * * *.

In Jones, the Supreme Court held that the fact that section one was reenacted in in 1870, two years after the passage of the Fourteenth Amendment, did not in any way limit its scope. 392 U.S. at 436–437, 88 S.Ct. 2186.

In 1874, what is now § 1982 was codified in § 1978 of the Revised Statutes.

---

6. *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all persons born in the United States and not subject to any foreign power, * * are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, * * * shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding."

7. Section 1982 provides that: "All citizens of the United States shall have the same right * * * as is enjoyed by white citizens * * * to inherit, purchase, lease * * * real and personal property."

8. See e. g., Kansas City, Mo. v. Williams, 205 F.2d 47 (8th Cir.), cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953); Valle v. Stengel, 176 F.2d 697 (3rd Cir. 1949).

9. Waters v. Wisconsin Steel Works, 427 F.2d 476 (7th Cir. 1970); Scott v. Young, 421 F.2d 143 (4th Cir.), cert. denied, 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970); Clark v. American Marine Corp., 304 F.Supp. 603 (E.D.La. 1969); United States v. Medical Society of South Carolina, 298 F.Supp. 145 (D.S.C.1968); Dobbins v. Local 212, 292 F.Supp. 413 (S.D.Ohio 1968). But see Tennessee ex rel. Davis v. Hartman, 303 F.Supp. 411 (E.D.Tenn.1969); Culpepper v. Reynolds Metals, 296 F.Supp. 1232 (N.D.Ga.1969), rev'd on other grounds, 421 F.2d 888 (5th Cir. 1970).

In *Jones,* the Supreme Court held that § 1982 is derived from section one of the 1866 Act. The Supreme Court's holding is bolstered by the fact that section one of the 1866 Act and § 1982, besides containing almost identical language, both protect only *citizens* of the United States.

While the language in § 1981 is very similar to that found in section one of the 1866 Act, this Court concludes that § 1981, rather than being derived from section one, is derived from section 16 of the Enforcement Act of 1870. Section 16, which was enacted primarily to protect the Chinese immigrants who had recently come to America, provides in pertinent part:

> *And be it further enacted,* That *all persons* within the jurisdiction of the United States shall have the same right in every State and Territory in the United States to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of the laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, *taxes, licenses, and exactions of every kind,* and none other. \* \* \* [Emphasis added.]

It is important to note that section 16 and § 1981, unlike section one of the 1866 Act and § 1982, protect *all persons,* not just citizens.[10]

This conclusion that § 1981 is derived from section 16 of the 1870 Act is supported by several sources. First, the

"Historical Note" under § 1981 in U.S. C.A. provides:

> Derivation. Act May 31, 1879, c. 114, § 16, 16 Stat. 144;

while the "Historical Note" under § 1982 in U.S.C.A. provides:

> Derivation. Act Apr. 9, 1866, c. 31, § 1, 14 Stat. 27.

Secondly, the Supreme Court itself has noted that § 1981 is merely a reenactment of section 16. Hurd v. Hodge, 334 U.S. 24, 30–31 n. 7, 68 S.Ct. 847, 92 L. Ed. 1187 (1948); United States v. Wong Kim Ark, 169 U.S. 649, 695–696, 18 S. Ct. 456, 42 L.Ed. 890 (1898); see Ho Ah Kow v. Nunan, 12 Fed.Cas. p. 252, No. 6546 (C.C.Cal.1879).

■ The fact that § 1981 is derived from section 16, while § 1982 is derived from section one of the 1866 Act, is of extreme importance. Since § 1981 is derived from section 16 of the 1870 Act, the Supreme Court case of Jones v. Alfred H. Mayer Co., supra, is not controlling. The Court finds, moreover, based on the legislative history of section 16 and on prior Supreme Court decisions, that Congress intended § 1981 to apply only to "state action" done "under color of law".

Early in 1870, Senator Stewart of Nevada introduced Sen. No. 365 "to secure to all persons equal protection of the law." [11] At the time he introduced the bill, the following dialogue took place between Senator Stewart and Senator Pomeroy:

> *Sen. Pomeroy:* I have not examined this bill, and I desire to ask the Sena-

---

10. In addition, section 16 and § 1981 both contain the following words not found in section one: "taxes, licenses, and exactions of every kind." It is clear from the legislative history of section 16 that these words were included, in part, to prevent any state from taxing the Chinese immigrants "differently from other people." Cong. Globe, 41st Cong., 2d Sess. 3808 (1870) (remarks of Senator Stewart).

11. Sen. No. 365 provided:
Sec. 1 Be it enacted \* \* \* That all persons within the jurisdiction of

the United States \* \* \* shall have the same right in every State and Territory in the United States to make and enforce contracts, to sue, be parties, give evidence \* \* \* as is enjoyed by white persons.

\*    \*    \*    \*    \*

Sec. 3 \* \* \* That the act to protect all persons in their civil rights, and furnish the means of vindication, passed April nine, eighteen hundred and sixty-six, is hereby reenacted.

tor from Nevada a question. I understood him to say that this bill gives the same civil rights to all persons in the United States which are enjoyed by citizens of the United States. Is that it?

*Sen. Stewart:* No; it gives all the protection of the laws. If the Senator will examine this bill in connection with the original civil rights bill [of 1866], he will see that it has no reference to inheriting or holding real estate.

*Sen. Pomeroy:* That is what I was coming to.

*Sen. Stewart:* The civil rights bill had several other things applying to citizens of the United States. This simply extends to foreigners, not citizens, the protection of our laws where the State laws deny them the equal civil rights enumerated in the first section.

Cong.Globe, 41st Cong., 2d Sess. 1536 (1870).

While no action was ever taken on Sen. No. 365, sections one, two and three of the bill eventually became sections 16, 17, and 18 of the 1870 Act.[12]

The Congressional debates on section 16 clearly support and require the conclusion that section 16 was intended to apply only to "state action" and to guarantee "equal protection of the laws" both within the meaning of the Fourteenth Amendment.[13] In one exchange between Senator Stewart and Senator Casserly, an opponent of section 16, Senator Stewart asked,

Dare he [Sen. Casserly] say to the good people of California that while the Chinese are here under our laws, and while we have a Constitution which says that no State shall deny to any person within its jurisdiction equal protection of the laws, Congress ought not to pass a law to give them protection.

Cong.Globe, 41st Cong., 2d Sess. 3807–08 (1870).

Several Supreme Court decisions further buttress this Court's conclusion that § 1981 was enacted pursuant to the Fourteenth Amendment. McLaughlin v. Florida, 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948), for example, the Supreme Court stated:

The protection of this section [1981] has been held to extend to aliens as well as citizens. Consequently the section and the Fourteenth Amendment on which it rests in part protect "all persons" against state legislation bearing unequally upon them either because of alienage or color. 334 U.S. at 419–420, 68 S.Ct. at 1142–1143; see In re Tiburcio Parrott, 1 F. 481, 508–509 (C.C., 1880).

Thus, having concluded that § 1981 only prohibits "state action" done "under color of law", the Court is compelled to hold that plaintiffs' § 1981 claim fails to state a claim against the defendants.

A formal order will be entered in accordance with the foregoing granting defendants' motion to dismiss the action.

---

12. See Cong. Globe, 41st Cong., 2d Sess. 4307 (1870) (remarks of Senator Thurman).

13. See Cong. Globe, 41st Cong., 2d Sess. 3701 (1870) (remarks of Senator Casserly).