**AMERICA'S BEST CINEMA CORPORA-
TION, d/b/a Cinema I Theatre,
Plaintiff,**

Angel Corporation, Intervenor,

v.

**FORT WAYNE NEWSPAPERS, INC.,
et al., Defendants.**

Civ. No. 72 F 34.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

Aug. 29, 1972.

Timothy J. Connor, Fort Wayne, Ind., for plaintiff.

Jerrald A. Crowell, Fort Wayne, Ind., for intervenor.

Walter E. Helmke, Walter P. Helmke, R. David Boyer, and John D. Shoaff, Fort Wayne, Ind., for defendants.

## MEMORANDUM OF DECISION AND JUDGMENT

ESCHBACH, District Judge.

Plaintiff, America's Best Cinema Corporation, and intervening plaintiff, Angel Corporation, bring this action against the defendant corporate newspapers and certain named editors and publishers of those newspapers. Plaintiffs contend that defendants' recently adopted advertising policy, which policy restricts certain of plaintiffs' proposed newspaper ads, is in violation of the federal antitrust laws and that such policy further deprives them of rights secured by the First and Fourteenth Amendments to the United States Constitution.

This cause came on to be heard on July 26, 1972 in Fort Wayne, Indiana, on plaintiffs' application for a preliminary injunction, seeking to restrain the enforcement of portions of defendants' advertising policy. At the commencement of the hearing, this court suggested that the trial of this action on the merits, as to the issue of liability, be advanced and consolidated with the hearing of the application for preliminary injunction pursuant to Fed.R.Civ.P. 65(a)(2). All parties of record agree to this procedure and the issue of liability was thereafter tried to the court, with the issue as to amount of damages only, if such issue needed to be reached, reserved for trial by jury. Concerning that issue of liability, this court has concluded that judgment shall be entered in favor of all defendants and against plaintiff and intervening plaintiff as to all counts of their respective complaints.

Plaintiff, America's Best Cinema Corporation, is an Indiana corporation operating a motion picture theatre in Fort Wayne, Indiana, which theatre exclusively shows motion pictures that have been given an "X" rating by the Motion Picture Association [MPA].[1] Intervening plaintiff, Angel Corporation, is an Indi-

---

1. The evidence at trial disclosed that an "X" rating is given a motion picture when it has been determined by an internal review board of the Motion Picture Association that such film is not suitable for viewing by children because of the film's treatment of sex and/or violence.

ana corporation operating a tavern in Fort Wayne, Indiana, which tavern until recently provided for its customers the continuous showing of unrated motion pictures, which motion pictures are presented to the public as "adult" because of their explicit treatment of sexual activity.

On May 1, 1972 and as amended on May 19, 1972, defendant, Fort Wayne Newspapers, Inc., the business agency corporation for the Fort Wayne Journal-Gazette and Fort Wayne News-Sentinel newspapers, effectuated a revised threatre-amusement advertising policy. For the purposes of this action, the relevant portions of that advertising policy stated that Fort Wayne Newspapers, Inc., would

> "reject all advertising, including that for the movie guide, from those movie houses which habitually show only unrated adult films, or those with an MPA X rating. Permit those theatres to run an ad using their signatures and phone number only."

Item six of the ad policy stated that the newspapers would also reject ads from nighclubs, bars, and taverns, referring to films being shown at those establishments.

Plaintiffs, in Count I of their respective complaints, contend that the above advertising policy is the result of a conspiracy among the defendants and that such conspiracy is in restraint of trade in violation of section one of the Sherman Act, 15 U.S.C. § 1. In Count II, plaintiffs allege that defendants have monopolized or have conspired to monopolize trade in violation of section two of the Sherman Act, 15 U.S.C. § 2. Count III alleges that defendants have deprived plaintiffs of their freedom of speech as secured by the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983. In Count IV, plaintiffs submit that the defendants have conspired to deprive them of the equal protection of the laws in violation of 42 U.S.C. 1985(3). Jurisdiction is founded upon 28 U.S.C. § 1337 and upon 28 U.S.C. § 1343(1) and (3). Plaintiffs have sought injunctive and compensatory relief, and treble damages, which latter damages flow only from the alleged antitrust violations.

In order to prevail on Count I of their action, the burden was upon the plaintiffs to show that the defendants had combined or conspired in restraint of trade. A combination or conspiracy is established under section one of the Sherman Act by evidence of "joint, collaborative action," United States v. General Motors Corp., 384 U.S. 127, 140, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966), or action pursuant to a "unity of purpose or a common design and understanding," Kiefer-Stewart Co. v. Joseph E. Seagram and Sons, Inc., 340 U.S. 211, 213, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951). If such combination or conspiracy "unreasonably" restrains competition, section one is violated. Northern Pacific R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958).

Because of the interlocking corporate ownerships involved, the first question that must be answered[2] is whether it is *theoretically* possible for the corporate defendants here to have conspired among themselves. The News Publishing Company, which is the corporate structure operating the News-Sentinel, owns sixty-six and two-thirds per cent (66⅔%) of the stock in defendant Fort Wayne Newspapers, Inc., with the defendant Journal-Gazette holding the remaining outstanding stock. The interlocking ownership of these corporations, however, does not detract from their legally separate identities. It is now well settled that affiliated or integrated ownership does not preclude the existence of a combination or conspiracy among related corporations. United States v. Yellow Cab Co., 332 U.S. 218, 227, 67 S.Ct. 1560, 91 L.Ed. 2010 (1948). *See also* Perma Life Mufflers, Inc. v. Inter-

---

2. The parties have stipulated to the interstate elements necessary for a violation of 15 U.S.C. §§ 1 and 2.

national Parts Corp., 392 U.S. 134, 141, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); Keifer-Stewart Co., *supra* 340 U.S. at 215, 71 S.Ct. 259; Schine Chain Theatres Inc. v. United States, 334 U.S. 110, 116, 68 S.Ct. 947, 92 L.Ed. 1245 (1948).

The question remains, however, whether or not these defendants did in fact take the requisite joint, collaborative action necessary to constitute a conspiracy. Although the existence of joint ownership among corporations does not preclude the presence of a conspiracy, such ownership does present difficulty in attempting to evaluate the actual proof of that conspiracy. This court has found no evidence of an active combination or conspiracy among the officers of these three corporations. However, because Fort Wayne Newspapers, Inc., is owned by the News-Sentinel and Journal-Gazette, it is difficult to say that *any* action taken by Fort Wayne Newspapers is not done in concert with the other two corporations.

 It is evident that the person most instrumental in the adoption of the amusement advertising policy in question here was Miss Helene Foellinger. She, as majority shareholder in News Publishing Company and as publisher of the News-Sentinel as well as president of Fort Wayne Newspapers, Inc., functions in differing capacities for the various defendant corporations. It is obvious that Miss Foellinger could not conspire with herself, nor could each separate corporation conspire with that corporation's own officers. Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); Chapman v. Rudd Paint and Varnish Company, 409 F.2d 635, 643 n. 9 (9th Cir. 1969); Nelson Radio and Supply Co. v. Motorola, 200 F.2d 911, 914 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). However, Miss Foellinger was a representative of both Fort Wayne Newspapers, Inc., and News-Sentinel during the period she and her fellow officers and agents in Fort Wayne Newspapers, Inc., discussed and agreed upon the revised amusement advertising policy. It would be difficult indeed to find that she was acting singularly in her capacity as president of Fort Wayne Newspapers, Inc., during the adoption of this policy. It is obvious that in adopting the revised advertising policy, Miss Foellinger was representing both the News-Sentinel and Fort Wayne Newspapers, Inc. The court must conclude, therefore, that there did exist a unity of purpose sufficient to form a combination or conspiracy between the officers and agents of Fort Wayne Newspapers, Inc., and Helene Foellinger as publisher and majority shareholder of News-Sentinel. Moreover, as between Journal-Gazette and Fort Wayne Newspapers, Inc., it is sufficient for the "combination or conspiracy" requirement of 15 U.S.C. § 1 that the Journal-Gazette acquiesced in the revised advertising policy adopted by Fort Wayne Newspapers, Inc. *See* United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948); Interstate Circuit, Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939). In this context, the strictures of the "combination or conspiracy" element of 15 U.S.C. § 1 may seem unduly technical, but it must be remembered that the defendant corporations have availed themselves of the *privilege* of doing business through separate corporations. The fact of common ownership and direction can not save them from any of the obligations that the law imposes on those separate entities. *Perma Life, supra* 392 U.S. at 116, 88 S.Ct. 1981.

 Every contract agreement or unified course of action is, to some extent, a conspiracy or combination. The mere existence of that combination or conspiracy, however, does not render the acts done in pursuit of the plan unlawful. Moreover, even a combination that restrains trade is not unlawful unless such restraint is "unreasonable" within the meaning given to 15 U.S.C. § 1. White Motor Corp. v. United States, 372

U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); United States v. Columbia Steel Co., 334 U.S. 495, 68 S.Ct. 1107, 92 L. Ed. 1533 (1948); Best Advertising Corporation v. Illinois Bell Tele. Co., 339 F. 2d 1009 (7th Cir. 1965). The determination as to whether a specified action is an unreasonable restraint of trade requires a consideration of all the facts and circumstances of a given case. Maple Flooring Mfrs. Ass'n v. United States, 268 U.S. 563, 579, 45 S.Ct. 578, 69 L.Ed. 1093 (1925).

■ The defendants here have not refused to deal with the plaintiffs. Their revised advertising policy merely restricts the contents of plaintiffs' ads. However, in traditional antitrust law parlance the most analogous situation to that presented here is the "refusal to deal" case. The critical inquiry in a refusal to deal action is not whether there was a refusal to deal or whether a refusal to deal was carried out by agreement with others, but, rather, "whether the refusal to deal, manifested by a combination or conspiracy, is so anti-competitive in purpose or effect, or both, as to be an unreasonable restraint of trade." Alpha Distributing Co. of California, Inc. v. Jack Daniels Distillery, 454 F.2d 442, 452 (9th Cir. 1972). *See also Hawaiian Oke, supra* 416 F.2d at 77–78. The inquiry in this regard is often a factual one, requiring the determination of motive or intent. *Alpha, supra* 454 F.2d at 452.

■ In those cases cited by the plaintiffs, where courts have restrained newspapers from refusing to accept advertising, the courts have found a purpose or motive either to exclude a person or group from the market or to accomplish some other anticompetitive objective. *See* Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L. Ed. 162 (1951); Kansas City Star Co. v. United States, 240 F.2d 643 (8th Cir. 1951), cert. denied, 354 U.S. 923, 77 S. Ct. 1381, 1 L.Ed.2d 1438 (1952). In Lorain Journal Co. v. United States, *supra,* the Supreme Court recognized the fun-

damental significance of an anticompetitive purpose as a prerequisite to an unreasonable restraint of trade when it stated:

> In the absence of any purpose to create or maintain a monopoly, the [Sherman] act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business freely to exercise his own independent discretion as to parties with whom he will deal. *Lorain, supra,* 342 U.S. at 155, 72 S.Ct. at 187. *See also* Coons, Non-Commercial Purposes as a Sherman Act Defense, 56 Nw.U.L.Rev. 705, 707 (1962).

There is no probative evidence in this cause showing that defendants had an anticompetitive purpose in adopting this policy. An editorial in the News-Sentinel of April 24, 1972 did state that the paper was concerned with the movement in motion pictures to sell tickets by "appealing to the prurience of people through pornographic gimmicks." This concern, however, was directed toward the motion picture industry in general and not toward these specific plaintiffs. Furthermore, the weight of the evidence clearly indicates that defendants' purpose or motive in adopting the new advertising policy was (1) the newspapers' concern that they would lose their "family image," (2) the growing burden of policing theatre ads for objectionable material. Those purposes are clearly not anticompetitive.

In determining the "reasonableness" of defendants' action, it is significant that they did not cease dealing with plaintiffs altogether, but only restricted the contents of their ads. It would be a harsh and far-reaching decision which held that a private newspaper was compelled by federal statute to publish advertising without control over its contents. *See* Associates and Aldrich Co. v. Times Mirror Co., 440 F.2d 133 (9th Cir. 1971); Approved Personnel, Inc. v. Tribune Co., Fla.App., 177 So.2d 704, 706 (1965). Considering the foregoing, this court has concluded that defendants' revised amusement advertising policy is

not an unreasonable restraint of trade in violation of section one of the Sherman Act, 15 U.S.C. § 1.

▄▄▄ This court has further concluded that the actions taken here by the defendants, allegedly in violation of 15 U.S.C. §§ 1 and 2, are specifically exempted from those violations by the terms of the Newspaper Preservation Act (NPA), 15 U.S.C. § 1801 et seq. The NPA provides for specific exemptions from the antitrust laws for qualifying joint newspaper operating arrangements. The court has found that the defendant newspapers here qualify under that Act. 15 U.S.C. § 1802.

Under Count II of their complaint, plaintiffs allege that defendants have monopolized trade in violation of section two of the Sherman Act, 15 U.S.C. § 2. Even assuming for the moment that defendants do hold such a monopoly, that monopoly exists by reason of the continued validity of the joint operating agreement between the Journal-Gazette and News-Sentinel formed in 1950. Section 1803 of the NPA states in substance that it shall not be unlawful under any antitrust law for any person to form or enforce any qualifying joint newspaper operating agreement. Therefore, to the extent the defendant newspapers, because of their "merger" in 1950, do occupy a monopoly position the status of such position is insulated from suit by the terms of the Newspaper Preservation Act, 15 U.S.C. § 1803. See generally Note, Newspaper Preservation Act: A Critique, 46 Ind.L.J. 392 (1971).

▄▄▄ Moreover, it is almost universally recognized that a single newspaper entity could adopt the policy defendants have adopted here and be free from liability. See, Associates and Aldrich Co., Inc. v. Times Mirror Co., supra; Chicago Joint Bd., Amal. Clothing Workers of America v. Chicago Tribune Co., 435 F.2d 470 (7th Cir. 1970); Staff Research Associates, Inc. v. Tribune Co., 346 F.2d 372 (7th Cir. 1965); Bloss v. Federated Publications, Inc., 380 Mich. 485, 157 N.W.2d 241 (1968); Shuck v.

Carroll Daily Herald, 215 Iowa 1276, 247 N.W. 813 (1933). Therefore, plaintiffs' action under Count I alleging a conspiracy in restraint of trade has a semblance of validity only because the newspapers have combined to restrict plaintiffs' ads. Under § 1803(c) of the Newspaper Preservation Act, the exemption under the antitrust laws is limited by the following language:

Nothing contained in the Chapter shall be construed to exempt from any antitrust law any predatory pricing, any predatory practice, or any other conduct in the otherwise lawful operations of a joint newspaper operating arrangement *which would be unlawful under any antitrust law if engaged in by a single entity* . . . . (Emphasis added.)

Considering the purpose of this Act, the court finds there is an obvious negative implication in the above language, the implication being that if a practice or conduct would be lawful if engaged in by a single newspaper entity, such conduct shall not become unlawful by the mere fact that two newspapers are operating under a qualifying joint newspaper agreement. One of the basic purposes of the Newspaper Preservation Act is to exempt from the antitrust laws the actions of joint operating newspapers, which actions would be unlawful only because they are operating jointly. See, Senate Committee on the Judiciary, 91st Cong., 1st Sess., Report on Newspaper Preservation Act, Report No. 91–535 (1969); Newspaper Preservation Act: A Critique, supra at 402, n. 54. In this action, to find that the individual defendant newspapers could have adopted this advertising policy with impunity and yet further find that they are liable merely because of their joint operation would be to thwart the purpose of the Newspaper Preservation Act.

▄▄▄ In Count III of their complaint, plaintiffs contend that defendants, in adopting this policy, have deprived them of their rights guaranteed under the First and Fourteenth Amendments in vi-

olation of 42 U.S.C. § 1983. In order to prevail under Count III, it is incumbent upon the plaintiffs to show that defendants have deprived them of a right secured by the "constitution or laws of the United States" and that such right was deprived "under color of any statute, ordinance, regulation, custom or usage, of any State." Bright v. Isenbarger, 314 F.Supp. 1382, 1388–1389 (N.D.Ind. 1970), aff'd, 445 F.2d 412 (7th Cir. 1971). This court need not consider whether plaintiffs have been deprived of a right secured by the Constitution since it is patently obvious that they have failed to show defendants acted "under color of state law."

Plaintiffs recognize that their arguments concerning "state action" here are very similar to those rejected by the United States Court of Appeals for the Seventh Circuit in Chicago Joint Board, Amal. Clothing Workers of America v. Chicago Tribune Company, *supra*. Plaintiffs argue, however, that in this case the presence of a state conferred monopoly distinguishes this case from *Chicago Joint Board, supra,* and that such conferral supplies the requisite "state action." This court finds no evidence whatever of a "state conferred monopoly." If plaintiffs are relying upon the specific exemptions of the Newspaper Preservation Act to confer this monopoly, that reliance is misplaced. Even if that act did confer some type of quasi-monopoly status to the defendants, such status would be conferred by the federal government rather than the state and would therefore not be "state action."

This court has concluded, in harmony with numerous other courts, that the actions of the defendant newspapers here did not constitute "state action" within the meaning of 42 U.S.C. § 1983. *See, e. g., Chicago Joint Board, supra; Associates and Aldrich Co., supra;* Keen v. Philadelphia Daily News, 325 F.Supp. 929 (E.D.Pa.1971); Cook v. Advertiser Co., 323 F.Supp. 1212 (M.D.Ala.1971); Resident Participation of Denver, Inc. v. Love, 322 F.Supp. 1100 (D.Colo.1971);

Bloss v. Federated Publications, 5 Mich. App. 74, 145 N.W.2d 800 (1966); Shuck v. Carroll Daily Herald, 215 Iowa 1276, 247 N.W. 813 (1933).

In Count IV of their complaint, plaintiffs contend that defendants have violated 42 U.S.C. § 1985(3) which provides in part

"If two or more persons . . . conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ."

that person may have a cause of action against the conspirators. Unlike Section 1983, a cause of action under Section 1985(3) does not require that the action taken must be done under "color of state law." Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). An action under Section 1985(3), however, is reserved for certain limited situations. The Supreme Court in Griffin v. Breckenridge, *supra,* stated that the language of Section 1985(3) requiring intent to deprive of equal protection or equal privileges and immunities under the law means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the conspirators' actions. *Griffin, supra* at 102, 91 S.Ct. 1790.

The parties have stipulated that no racial discrimination was involved in defendants' actions, and plaintiffs presented nothing to show that defendants' acts were based on some otherwise invidiously discriminatory classification. Without some evidence of either of the above factors, plaintiffs' action must necessarily fail under 42 U.S.C. § 1985(3). *See Griffin, supra* at 102, 91 S.Ct. 1790; Action v. Gannon, 450 F.2d 1227, 1232 (8th Cir. 1971); Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971).

The foregoing shall constitute this court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).