Paul J. TRAFFICANTE et al., Plaintiffs-Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY et al., Defendants-Appellees.

No. 71-1325.

United States Court of Appeals, Ninth Circuit.

Aug. 6, 1971.

Rehearing Denied Sept. 13, 1971.

George H. Clyde, Jr., Stephen V. Bomse (argued), Margaret D. Brown, San Francisco, Cal., for appellants.

Richard J. Kilmartin (argued), of Knight, Boland & Riordan, San Francisco, Cal., for appellee Metropolitan Life Insurance Company.

Robert M. Shea (argued), Edward R. Steefel, Kate Clair Freeland, of Dinkelspiel, Steelfel, Levitt, Weiss & Donovan, for appellee Parkmerced Corporation.

James L. Browning, Jr., U. S. Atty., David L. Norman, Acting Asst. Atty. Gen., Frank E. Schwelb, Elliott D. McCarty, and Robert J. Wiggers, Attys., U. S. Dept. of Justice, amicus curiae for the United States.

William Bennett Turner and Oscar Williams, San Francisco, Cal., and Jack Greenberg and James M. Nabrit, III, New York City, amicus curiae for NAACP Legal Defense and Educational Fund, Inc.

Before CHAMBERS and CARTER, Circuit Judges, and * JAMESON, District Judge.

JAMESON, District Judge:

This is an appeal from an order dismissing an action under Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 et seq.) and 42 U.S.C. § 1982 by tenants of a large apartment complex challenging allegedly racially discriminatory practices of their landlord.

On August 18, 1970 plaintiffs-appellants, Paul J. Trafficante, a Caucasian, and Dorothy M. Carr, a Negro, filed a complaint alleging that defendant-appellee, Metropolitan Life Insurance Company, the owner of the Parkmerced Apartment complex, was engaging in racially discriminatory practices in the rental of apartments, and seeking injunctive relief, actual and punitive damages, costs and attorney fees.[1]  On October 13, 1970

---

\* Honorable William J. Jameson, United States Senior Judge, Billings, Montana, sitting by designation.

1. Prior to filing this action, plaintiffs, pursuant to 42 U.S.C. § 3610, had filed a complaint with the Department of Housing and Urban Development (H.U.D.). The complaint was referred by H.U.D. to the California Fair Employment Practices Commission, which returned it to

**1160**

a complaint in intervention was filed by four other residents of the Parkmerced complex and an unincorporated association of its residents.[2]

On December 21, 1970 Metropolitan sold[3] the Parkmerced property to the Parkmerced Corporation which took the property with notice of the pending litigation. Parkmerced Corporation was ordered joined as a party defendant under Rule 25, F.R.Civ.P.

In dismissing the action the district court noted that the plaintiffs have not alleged, "nor can they, that they themselves have been denied any of the rights granted by Title VIII or by 42 U.S.C. § 1982 to purchase or rent real property." The court held that plaintiffs have no "generalized standing" to enforce the Act for the reasons that they were not "persons aggrieved" within the meaning of 42 U.S.C. § 3610(a) and "the enforcement of the public interest in fair housing enunciated in Title VIII of the Act and the creation of integrated communities to the extent envisioned by Congress are entrusted to the Attorney General by § 813, 42 U.S.C. § 3613, and not to private litigants such as those before the Court." We conclude that the district court properly held that the plaintiffs do not have the requisite standing to maintain this action under either the Civil Rights Act of 1968 or 42 U.S.C. § 1982.[4]

The tests for determining standing to sue were summarized in Association of Data Processing Service Organizations v. Camp, 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184:

"Generalizations about standing to sue are largely worthless as such. One generalization is, however, necessary and that is that the question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to 'cases' and 'controversies.' 397 U.S. at 151, 90 S.Ct. at 829.

\*    \*    \*    \*    \*    \*

"(The question of standing) concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus the Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.' 5 U.S.C. § 702, (1964 ed; Supp. IV.) That interest, at times, may reflect 'aesthetic, conservational and recreational' as well as economic values." (Citing cases) Id. at 153–154, 90 S.Ct. at 830.

\*    \*    \*    \*    \*    \*

"Apart from Article III jurisdictional questions, problems of standing, as resolved by this Court for its own governance, have involved a 'rule of self-restraint.' Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586. Congress can, of course, resolve the question one way or another, save as the requirements of

---

H.U.D. for the expressed reason that the Commission lacked adequate resources to deal with the charges. H.U.D. then notified plaintiffs that it was unable to achieve voluntary compliance.

2. Except as otherwise stated, the plaintiffs and plaintiffs in intervention will be referred to collectively as plaintiffs.

3. More specifically Metropolitan leased the land to Parkmerced Corporation for 30 years with options to renew for an additional 45 years and sold the buildings and improvements to it subject to a long term mortgage and other security interests.

4. Accordingly we find it unnecessary, as did the district court, to consider the contention of Parkmerced that it was improperly joined as a defendant or Metropolitan's additional contentions that the sale of the property rendered the case moot as to it and that the federal courts lacked subject matter jurisdiction under 42 U.S.C. § 3610(d) because plaintiffs had a "substantially equivalent" remedy under both the California Rumford Act (Cal.Health & Safety Code § 35700 et seq.) and the Unruh Civil Rights Act (Cal.Civ.Code §§ 51, 52).

Article III dictate otherwise. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246." Id. at 154, 90 S.Ct. at 830.

Accordingly it is necessary to examine the statutes upon which the action is based to determine whether plaintiffs have been granted standing to maintain the action. The complaint of Trafficante and Carr contains three causes of action. The first is based upon 42 U.S.C. § 3610 and the second upon § 3612 contained in the Fair Housing Title (Title VIII) of the Civil Rights Act of 1968. The third cause of action is based upon 42 U.S.C. § 1982, a part of the Civil Rights Act of 1866.[5]

Are plaintiffs "persons aggrieved" within the meaning of sections 3610 and 3612? Section 3610(a) defines a person aggrieved as one "who claims to have been injured by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur * * *."[6] A person so aggrieved may file a complaint with the Secretary of H.U.D. The complaint must be filed within 180 days after the discriminatory act is alleged to have occurred and "shall state the facts upon which the allegations of a discriminatory housing practice are based." § 3610(b). If state or local law provides rights and remedies "substantially equivalent" to those provided under Title VIII, the Secretary must notify the appropriate agency to allow it an opportunity to resolve the problem. § 3610(c). Otherwise, the Secretary may attempt to reconcile the parties "by informal methods of conference, conciliation, and persuasion." § 3610(a). If the Secretary, or the state or local agency, is unable to resolve the problem, the complainant then has 30 days in which to file an action in the United States District Court for the district where the discriminatory housing

practice is alleged to have occurred or where the respondent lives or has his principal place of business. However, if state or local law provides a substantially equivalent judicial remedy the complainant is limited to that remedy. § 3610(d).

Alternatively, a person may bring a civil action directly in a United States District Court or a state or local court of general jurisdiction under section 3612 to enforce "the rights granted by sections 3603, 3604, 3605, and 3606." The action must be bought "within one hundred and eighty days after the alleged discriminatory housing practice occurred." In a proper case the court is authorized to appoint an attorney for the plaintiff and allow him to proceed without payment of costs or security. As remedies, the plaintiff may obtain injunctive relief, actual damages and up to $1,000 in punitive damages. A prevailing plaintiff may also recover attorney's fees if in the opinion of the court he is not financially able to assume such fees.

Sections 3603, 3604, 3605, and 3606 make unlawful specified acts of discrimination in the sale or rental of property (§§ 3603 and 3604), its financing (§ 3605), and in the provision of brokerage services (§ 3606). Section 3604, the only section conceivably applicable, provides that, subject to certain exemptions, "it shall be unlawful

"(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.

"(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of

---

5. The complaint in intervention contains two causes of action—based upon sections 3612 and 1982 respectively. These plaintiffs did not file complaints with the Secretary under section 3610.

6. It is true, as appellants argue, that this language, standing alone is very broad. It must be construed, however, with section 3602(f) which defines "discriminatory housing practice" as an "act that is unlawful under section 3604, 3605, or

race, color, religion, or national origin." [7]

There is no allegation in either complaint that any of the plaintiffs was the direct object of any discriminatory housing practice proscribed by the Act; nor are any specific acts of discrimination alleged. Rather both complaints simply allege generally that

"* * * as of the date of the filing of this complaint and for many years prior thereto, Metropolitan, as owner and operator of Parkmerced, has systematically discriminated against members of minority racial and ethnic groups * * *."

These acts of discrimination on the part of Metropolitan are said to have caused plaintiffs to lose

"the benefits of living in a community with those persons who have been excluded from Parkmerced by reason of their race, color, or national origin, including the following:

"(a) plaintiffs are deprived of the social benefit of living within a community which is not artificially imbalanced in a manner which excludes minority group members;

"(b) plaintiffs suffer the loss of business and professional advantages which accrues from contact and association with minority group members;

"(c) plaintiffs are stigmatized within both the white and minority group communities as residents of a segregated 'white ghetto', causing such residents both embarrassment and economic damage in social, business and professional activities."

Plaintiffs do not claim to have been injured as the result of any specific discriminatory housing practice committed against any particular person. Rather the injury for which they seek redress grows out of the alleged maintenance of a segregated "white ghetto", or, in other words, out of a "pattern or practice" of discrimination.[8]

Section 3613 grants the Attorney General the power to bring an action for preventive relief where he believes that a person or group of persons is engaged in a pattern or practice of resistance to the rights granted by Title VIII or where a group of persons has been denied these rights and such denial raises an issue of "general public importance." No provision of Title VIII grants a similar right of action to private parties.

▮ Construing the provisions of Title VIII as a whole, it seems clear that it was the intent of Congress to provide first, through sections 3610 and 3612 methods of redress for persons who are the objects of discriminatory housing practices and who seek to vindicate

---

3606 of this title." The provisions of those sections are discussed later herein.

7. Additionally § 3604 makes it unlawful:

"(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, or national origin, or an intention to make any such preference, limitation, or discrimination.

"(d) To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

"(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin."

8. In opposing defendants' motions to dismiss plaintiffs filed an affidavit of Dr. Alvin F. Poussaint expressing the opinion that the maintenance of segregated housing patterns tends to foster white racism and to cause various forms of psychological trauma in both white and minority residents of a largely segregated neighborhood. We accept Dr. Poussaint's statement, as we do all of the allegations of plaintiffs' complaint, as true. The affidavit itself, however, indicates that the thrust of plaintiffs' complaints is directed toward the maintenance by defendants of segregated housing conditions and not toward any specific act which may be actionable under the statutes in question.

rights granted by sections 3603, 3604, 3605, and 3606; and second, to grant to the Attorney General the right to sue to correct "patterns and practices" of discrimination. This conclusion is supported by the legislative history of Title VIII.[9] We find nothing in the Congressional discussion or debate to suggest that Congress intended to grant standing to sue to any private persons other than the direct victims of discriminatory housing practices proscribed by the Act.[10]

■ Do plaintiffs have standing to sue under 42 U.S.C. § 1982? That section reads:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

In Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, the complaint had alleged that respondents had refused to sell petitioners a home for the reason that one of them was a Negro. The lower courts had held that § 1982 applied only to state actions and did not reach private refusals to sell. In reversing the Court held that § 1982 prohibited all racial discrimination in the sale or rental of property and was a valid exercise of Congress's power under the Thirteenth Amendment.

We find nothing in Jones v. Alfred H. Mayer to indicate that section 1982 would be construed to grant standing to sue to anyone other than a person who was the victim of racial discrimination in the sale or rental of property.[11] In most of the cases decided subsequent to Jones v. Alfred H. Mayer the plaintiffs were persons who had been denied the right to purchase [12] or rent [13] property because of their race or who were discriminated against in the terms or conditions of sale or rental for similar reasons.[14]

9. See Congressional Record, volume 114, no. 17, p. S–983 (sponsor's summary of proposed legislation); pp. S–984–94 (remarks of Senators Mondale and Brooke); no. 18, pp. S–1055–6 (remarks of Senator Tydings); no. 19, pp. S–1184–90 (remarks of Senators Javits, Hart and Kennedy); no. 36, p. S–2309 (colloquy between Senators Mondale and Allott); no. 61, p. H–2774 (remarks of Representative Rumsfeld); p. H–2784 (remarks of Representative Murphy).

10. It is clear also that this holding will not prevent a judicial determination of appellees' alleged discrimination and non-compliance with the provisions of Title VIII. Shortly after the entry of the order dismissing this action, five Negroes, represented by the counsel for appellants here, filed a class action in the Northern District of California, Burbridge, et al. v. Parkmerced Corporation, et al., No. C–71–378, pursuant to sections 3612 and 1982, alleging that each of them had been denied housing "because of his or her race, color, religion, and/or national origin." The complaint contains allegations similar to those set forth in the complaints in this action. Counsel informed the court at oral argument that the defendants did not challenge plaintiffs' standing to sue in that case; that an answer has been filed, and some depositions have been taken. Moreover, the present action is not a class action and would, of course, only determine the right of plaintiffs themselves to damages and injunctive relief.

11. In comparing § 1982 with the Civil Rights Act of 1968 the Court noted that § 1982 "makes no provision for intervention by the Attorney General" and is applicable "only to racial discrimination in the rental or sale of property and enforceable only by private parties acting on their own initiative * * *." 392 U.S. at 414, 417, 88 S.Ct. at 2191.

12. Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, Newbern v. Lake Lorelei, Inc., S.D. Ohio 1968, 308 F.Supp. 407; Lee v. Southern Home Sites Corp., 5 Cir. 1970, 429 F.2d 290.

13. Bush v. Kaim, N.D.Ohio 1969, 297 F.Supp. 151; Jones v. Sciacia, E.D.Mo. 1969, 297 F.Supp. 165 (aff'd 8 Cir. 1970, 422 F.2d 393); Harris v. Jones, D.Mass. 1969, 296 F.Supp. 1082; Smith v. Sol D. Adler Realty Co., 7 Cir. 1970, 436 F.2d 344; McLaurin v. Brusturis, E.D. Wis.1970, 320 F.Supp. 190; James v. Hafler, N.D.Ga.1970, 320 F.Supp. 397.

14. Contract Buyers League v. F&F Investment, N.D.Ill.1969, 300 F.Supp. 210 (aff'd sub nom. Baker v. F&F Investment, 7 Cir. 1970, 420 F.2d 1191).

In Sullivan v. Little Hunting Park, Inc., 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, a white person who was expelled from membership in a community recreation club because he had rented property and assigned his membership rights to a Negro was allowed to maintain an action for damages. A similar action was upheld in Walker v. Pointer, N.D.Tex.1969, 304 F.Supp. 56, where whites were evicted from rented premises because they had entertained Negro guests. In Sullivan the decision was placed on the ground that under Barrows v. Jackson, 1953, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, allowing state courts to enforce sanctions against persons who attempt to vindicate the rights of minorities would "give impetus to the perpetuation of racial restrictions on property." 396 U.S. at 237, 90 S.Ct. at 404. In Walker the court also relied on Barrows and in addition stated that to deny recovery would be to read into section 1982 a "racist purpose * * * antithetical to the ennobling objective of the statute and of the Thirteenth Amendment from which it was drawn." 304 F.Supp. at 60.

Appellants argue that on the basis of these decisions they have standing to sue. We do not agree. While the plaintiffs in Sullivan and Walker were white persons there was in each case a racially motivated interference with property rights. Here there is no allegation that defendants interfered with the leasehold rights of any of the plaintiffs. The Court's examination of the legislative history of the Civil Rights Act of 1866 in Jones v. Alfred H. Mayer, supra, makes it clear that the purpose of Congress was to forbid racial discrimination affecting the basic civil rights enumerated therein, including the right to purchase or lease property, and to guarantee the newly freed slaves the property rights enjoyed by white citizens. This Congress could do under the enforcement clause of the Thirteenth Amendment because discrimination in the sale or rental of housing is a "badge or incident" of slavery. 392 U.S. at 441, 88 S.Ct. 2186. We find no indication that Congress intended to allow either third party enforcement of the rights granted by § 1982 or an independent right of action in a person who has not been stamped with a "badge of slavery" either by an act of discrimination or some racially motivated interference with his property rights. Accordingly, we cannot say that the interest asserted by plaintiffs is "arguably within the zone of interests to be protected" by section 1982.

Affirmed.