Donald **MARSHALL** and Edward **Hubert**

v.

**PLUMBERS AND STEAMFITTERS LOCAL UNION 60 OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBERS AND PIPEFITTING INDUSTRY OF the U. S. AND CANADA AFL–CIO et al.**

**Civ. A. No. 71–2344.**

United States District Court, E. D. Louisiana.

May 30, 1972.

Ernest H. Gould, Jr., of Wells, Gould & Breaux, New Orleans, La., for plaintiffs.

Jerry L. Gardner, Jr., of Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for defendant Local Union 60.

## MEMORANDUM OF REASONS

COMISKEY, District Judge

This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiffs are suing their union and several officials and/or members thereof, alleging that the defendants are engaging in discriminatory hiring hall practices. Defendants have moved for a summary judgment on the ground, *inter alia,* that the plaintiffs suffered no unlawful, unfair or discriminatory employment practices based on race, color, religion, sex or national origin.

The plaintiffs are both white (Hubert deposition, p. 4; Marshall deposition, p. 3), and the defendants are all white. Furthermore, it is apparent from a reading of the depositions of the plaintiffs that they are not in a position to assert the rights of any black or Indian employees who might be the victims of the discriminatory practices complained of herein. Thus, neither plaintiff knows of any blacks who were denied membership in the union or who were denied job referral by the union. (Hubert deposition, pp. 28–29; Marshall deposition, p. 36.) Plaintiff Marshall asserted that he represents black employees trying to gain entrance into the union but he does not know them by name. Furthermore, he admitted that none had asked that he represent them. He also admitted that he knew of none who had been turned down. (Marshall deposition, pp. 35–36.) He later said that he knew an Indian

who had been mistreated, but there is no indication that he was representing the Indian. (Marshall deposition, p. 48.) Plaintiff Marshall even asserted that the minority group to which he was referring consists of union men like himself (whom he called "permanent men") who have allegedly been mistreated. (Marshall deposition, pp. 47–48.) Plaintiff Hubert stated that he knew of no black persons who were denied referral by the union. Indeed, he even stated that "I don't know any Negroes." He also said that he knew of no Indians who were denied referral. (Hubert deposition, pp. 27–29.) In neither the plaintiffs' depositions nor in any of the other evidentiary material submitted in this case, is there any evidence tending to establish the claim that the practices of which plaintiffs complain were based on race, color, religion, sex or national origin.

Thus, we are faced with a situation in which the plaintiffs and defendants are all of the same race, the plaintiffs are not in a position to represent members of racial or religious minority groups, and the practices complained of herein have nothing to do with race, color, religion, sex or national origin.

The plaintiffs clearly have no cause of action under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(c) provides in part:

"It shall be an unlawful employment practice for a labor organization—

"(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual *because of his race, color, religion, sex, or national origin;*

"(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, *because of*

*such individual's race, color, religion, sex or national origin* . . . ." (Emphasis added.)

Clearly, this section refers only to practices based on race, color, religion, sex or national origin. Since there are no such practices involved in this case, the plaintiffs' cause of action under the 1964 Civil Rights Act should be dismissed.

■ Likewise, the plaintiffs' cause of action under the Civil Rights Act of 1866 must fall. 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

This Court is of the opinion that only suits based on racial discrimination may be maintained under this statute.

Section 1981 was narrowly construed in Perkins v. Banster, 190 F.Supp. 98, 99 (D.Md.1960), aff'd 285 F.2d 426 (4th Cir. 1960), in which the court said:

"Section 1981 is the equal rights section giving to non-white persons the same rights which are enjoyed by white persons. Since the plaintiff, obviously and admittedly, is a white person, Section 1981 serves as no basis for jurisdiction in this case."

There are two cases in which whites have been permitted to maintain actions under this section, but in each case racial discrimination was involved. In Central Presbyterian Church v. Black Liberation Front, 303 F.Supp. 894 (E.D.Mo.1969), and Gannon v. Action, 303 F.Supp. 1240 (E.D.Mo.1969), aff'd in part and rev'd in part, 450 F.2d 1227 (8th Cir. 1971), members of predomi-nantly white church congregations were allowed to maintain actions against black militants who were disrupting their services. Even though whites were allowed to maintain § 1981 actions in these cases, the court was clear that its holdings were based on the fact that racial discrimination was involved in each case.

There have been comparable holdings under 42 U.S.C. § 1982, which contains language similar to § 1981 concerning racial discrimination. In Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969), the Supreme Court allowed a white person to maintain a § 1982 action when he was punished for advocating a black person's right to be a member of a community recreation club. But it is clear that this suit was permitted because racial discrimination was involved. In Walker v. Pointer, 304 F.Supp. 56 (N.D.Tex.1969), a white couple was evicted from their apartment after having entertained black guests. The court held that even though plaintiffs were white, they could sue under § 1982 because "they are direct victims of black racial discrimination, discrimination directed at them because of their black associations." 304 F.Supp. at 58. The court was clear that its decision was based on the fact that there had been racial discrimination. See also: Trafficante v. Metropolitan Life Insurance Company, 446 F.2d 1158 (9th Cir. 1971).

Indeed, it appears that both § 1981 and § 1982 are sufficiently narrow so that they do not even cover discrimination based on religion, sex or national origin. Thus, in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968), the Supreme Court said that § 1982 "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin." In Schetter v. Heim, 300 F.Supp. 1070, 1073 (E.D.Wis.1969), the court came to the same conclusion as to both § 1981 and § 1982.

We conclude that a party cannot maintain a § 1981 cause of action unless he is the victim of unfair practices or discrimination based on race. Since there are no such practices or discrimination involved in this case, we are of the opinion that the plaintiffs' § 1981 cause of action should also be dismissed.

For the foregoing reasons we hold that the defendants' motion for a summary judgment be, and the same is, hereby granted.